UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Marisa Garcia, | ) | Case No. 14bk14023 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| _____ | ) | |
| | ) | |
| Patrick S. Layng, United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 16ap00387 |
| | ) | |
| Marisa Garcia, | ) | Judge Timothy A. Barnes |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION[1]

The matter before the court arises out of the Complaint Objecting to Debtor's Discharge and for Other Relief [Adv. Dkt. No. 1][2] (the "Complaint"), filed by the United States Trustee (the "U.S. Trustee") in the above-captioned adversary proceeding (the "Adversary"), objecting to the discharge of Marisa Garcia (the "Debtor"). In Count III, the only remaining count of the Complaint, the U.S. Trustee alleges that the Debtor failed to disclose certain assets on her bankruptcy petition, therefore violating 11 U.S.C. § 727(a)(4)(A). The matter was tried before the court in two consecutive days of trial on March 19 and 20, 2018 (the "Trial").

For the reasons set forth herein, the court holds that the U.S. Trustee did not satisfy his burden. The U.S. Trustee did not establish by a preponderance of the evidence that the Debtor

---

[1] This Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and, individually, "Bankruptcy Rule"). A separate judgment order will be entered pursuant to Bankruptcy Rule 9021.

[2] References to docket entries in the Adversary will be noted as "Adv. Dkt. No. ___." References to docket entries in the underlying bankruptcy case, *In re Garcia*, Case No. 14bk14023 (Bankr. N.D. Ill. filed April 15, 2014) (Barnes, J.), will be noted as "Dkt. No. ___."

acted with fraudulent intent when failing to disclose certain assets on her bankruptcy petition, as required by section 727(a)(4)(A).

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 23 U.S.C. §§ 157(b)(1), (c). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

This matter is a core proceeding under 28 U.S.C § 157(b)(2)(A), (J). An objection to a debtor's discharge may only arise in a case under the Bankruptcy Code and is specified as a core proceeding. *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *Hunt v. O'Neal (In re O'Neal)*, 436 B.R. 545, 550 (Bankr. N.D. Ill. 2010) (Schmetterer, J.). Further, all parties have consented to the court's adjudication of the Adversary. *Wellness Int'l Network, Ltd. v. Sharif*, — U.S. —, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

Accordingly, final judgment is within the scope of the court's jurisdiction and constitutional authority.

## PROCEDURAL HISTORY

The U.S. Trustee commenced this Adversary on June 28, 2016. The Complaint alleged four counts under which the U.S. Trustee asserted that the Debtor's discharge should be denied. The court dismissed Count I pursuant to the Debtor's motion [Adv. Dkt. No. 18], and Counts II and IV were voluntarily dismissed by the U.S. Trustee [Adv. Dkt. No. 61]. All that remains for determination is Count III, the section 727(a)(4)(A) discharge objection.

In considering the U.S. Trustee's objection, the court has considered the evidence and arguments presented by the parties at the Trial and reviewed the Complaint and each of the following:

2

(1)    Answer and Affirmative Defense to Counts II, III, IV of the Complaint Objecting to Discharge [Adv. Dkt. No. 16];

(2)    Final Pretrial Order Governing Adversary Complaint Objecting to Debtor's Discharge and for Other Relief [Adv. Dkt. No. 53];

(3)    Joint Pretrial Statement [Adv. Dkt. No. 62] (the "Joint Pretrial Statement");

(4)    Brief *in Lieu* of Closing Argument [Adv. Dkt. 77]; and

(5)    Marisa Garcia's Trial Brief [Adv. Dkt. 78].

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though the foregoing items do not constitute an exhaustive list of the filings in the Adversary, the court has taken judicial notice of the contents of the docket in this matter and the underlying bankruptcy case. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## BACKGROUND[3]

The Debtor commenced her bankruptcy case by filing a voluntary chapter 7 petition on April 15, 2014 (the "Petition Date"). Her attorney, Catherine Molnar-Boncela ("Molnar-Boncela"), filed this case on her behalf. Subsequently, Neville Reid was appointed to serve as the chapter 7 trustee (the "Chapter 7 Trustee") for the Debtor's bankruptcy case. On the Petition Date, the Debtor signed and filed various required documents including the schedules [Dkt. No. 1] (the "Original Schedules") and the statement of financial affairs.

In the Original Schedules filed on the Petition Date, the Debtor disclosed her ownership of real and personal property. On Schedule B, in response to Question 7 which requests debtors to disclose their interests in "[f]urs and jewelry," the Debtor disclosed interests in "costume jewelry" valued at $500.00 and a "wedding ring" valued at $459.00. On her schedules, the Debtor also reported secured debts totaling $10,366,950.96 and unsecured debts totaling $519,191.09. At the meeting of creditors under section 341 of the Bankruptcy Code held on June 5, 2014 (collectively with the continued meeting dates, the "341 Meeting"), the Debtor affirmed the accuracy of all of her bankruptcy documents filed on the Petition Date, including the information contained in the Original Schedules. The 341 Meeting was continued to July 31, 2014.

Three days prior to the continued 341 Meeting, on July 28, 2014, the Debtor amended her schedules and statement of financial affairs [Dkt. No. 20] (the "Amended Schedules"). Molnar-Boncela filed the Amended Schedules on the Debtor's behalf. On Schedule B of the Amended Schedules, in response to Question 7 (requiring a debtor to input the value of the "[f]urs and jewelry" in which they have a property interest), the Debtor increased the reported value of her "costume jewelry" from $500.00 to $1,500.00. The Debtor also made additional disclosures of a "diamond ring" with an "unknown" value, and a "diamond wedding set" valued at $5,295.00. The

---

[3]    The background facts are derived from the facts agreed upon by both parties, as presented in the Joint Pretrial Statement.

3

"wedding ring," valued at $459.00, remained unchanged in the Amended Schedules. The Debtor also added more specific details about other personal property disclosed in the Amended Schedules.

The day before the continued 341 Meeting, the Debtor retained Greg Stern as additional co-counsel for her bankruptcy case. The Debtor appeared and testified at the continued 341 Meeting on July 31, 2014, and the meeting was again continued to September 11, 2014. This meeting, however, was never conducted on the September date and was instead further continued to October 27, 2014.

At the 341 Meeting session held on October 27, 2014, the Debtor testified regarding the diamond ring with "unknown" value that was disclosed on the Amended Schedules. In her testimony, the Debtor described the ring as an approximately three carat diamond ring, given to her by her husband for their 25th anniversary three years prior. She further testified that she did not consult with her husband regarding the value of the ring and did not have an appraisal for the ring. The Debtor stated that the value was listed as "unknown" because she did not know the value of the ring and that she would need to get the ring appraised.

The October session of the 341 Meeting was continued a final time to November 17, 2014. Following the October meeting, the Debtor turned over the diamond ring pursuant to a request by the Chapter 7 Trustee. The final 341 Meeting session was thereafter held on November 17, 2014, where the Debtor again testified and agreed to produce various documents for the U.S. Trustee.

On December 15, 2014, the U.S. Trustee issued a subpoena pursuant to Bankruptcy Rule 2004 seeking several documents, including "[c]opies of all appraisals for the last 5 years on any and all jewelry owned or held by Defendant." In response, on January 12, 2015, the Debtor, through Molnar-Boncela, submitted the following documents:

(1)   A 2010 appraisal of a "solitaire engagement ring" valued at $459.00 (relating to the "wedding ring" as disclosed on the Debtor's bankruptcy schedules);

(2)   An appraisal dated July 24, 2014, for a 14-karat, white-gold, wedding set, valued at $5,295.00 (relating to the "wedding set" as disclosed on the Amended Schedules); and

(3)   An appraisal dated July 25, 2014, for a 3.7 carat, trillion cut, diamond ring, valued at $44,142.00 (relating to the "diamond ring" as disclosed on the Amended Schedules).

All of these appraisals were labelled as being for insurance purposes.

Over two years later, on March 30, 2016, the Debtor filed a seconded amended Schedule B [Dkt. No. 81] (the "Second Amended Schedules") through Molnar-Boncela. In the Second Amended Schedules, in response to Question 7 of Schedule B requesting the value of the Debtor's "[f]urs and jewelery," the defendant described her interest as follows:

(1)   "wedding ring ($459 insurance appraisal)" valued at "unknown"

(2)   "diamond ring ($44,142 insurance appraisal)" valued at "unknown"

(3)   "diamond wedding set ($5,295 insurance appraisal)" valued at "unknown"

The Second Amended Schedules were the final schedules filed by the Debtor in this case. The Debtor admits that as of the Petition Date, she maintained an interest in all of the jewelry, including the diamond ring and the diamond wedding set.

## FINDINGS OF FACT[4]

From the review and consideration of the procedural background, as well as the evidence presented at the Trial, the court determines the salient facts to be and so finds as follows:

(1)   The Debtor is a homemaker. She obtained a G.E.D. when she was in her twenties. She attended Hyles-Anderson College where she received a two-year degree in general studies. Tr. at pp. 145-48, Mar. 20, 2018.

(2)   The Debtor is also a trained phlebotomist, however the Debtor has not worked outside the home since the early 1990's. Tr. at p. 147, 150-51, Mar. 20, 2018.

(3)   Molnar-Boncela is bankruptcy attorney who has practiced for thirty-seven years in the areas of bankruptcy and commercial loans. She typically files between five and ten bankruptcy cases each month, primarily chapter 7 and chapter 13 cases. Tr. at p. 17, Mar. 19, 2018.

(4)   Molnar-Boncela represented the Debtor and the Debtor's husband in a chapter 11 joint bankruptcy case filed in 2009 in the Northern District of Indiana. Tr. at pp. 18-19, Mar. 19, 2018.

(5)   Molnar-Boncela met with the Debtor to prepare the Debtor's 2014 bankruptcy documents, including the Original Schedules. The Debtor helped to provide information for the Original Schedules, although the 2014 schedules were based on the 2009 schedules from the Debtor's previous case. Tr. at pp. 18-19, Mar. 19, 2018.

(6)   When questioning the Debtor about her personal property, Molnar-Boncela followed the procedures that she uses for all of her clients. Tr. at p. 36, Mar. 19, 2018.

(7)   The Debtor provided the answers to Question 7 of Schedule B of the Original Schedules regarding her jewelry and the value thereof. The Debtor testified that she valued the costume jewelry based on what she could sell it for, and valued the wedding ring based on a previous appraisal of the ring. Tr. at pp. 95-96, Mar. 20, 2018.

(8)   The Debtor testified that she did not disclose the diamond ring or wedding set on the Original Schedules because she "accidently unintentionally" omitted them. Tr. at p. 96, Mar. 20, 2018.

(9)   The Debtor did disclose the diamond ring and the diamond wedding set on the Amended Schedules filed approximately four months later. U.S. Trustee Exh. No. 3.

---

[4]   To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such. Adjudicative facts may also be found and determined later in this Memorandum Decision.

(10)    The Debtor did not file the Amended Schedules in response to any request by the Chapter 7 Trustee. Tr. at pp. 132-33, Mar. 20, 2018.

(11)    The Debtor and Molnar-Boncela both testified that they had the appraisal of the wedding set, but not the appraisal of the diamond ring at the time of filing the Amended Schedules. Tr. at p. 115, Mar. 19, 2018; Tr. at p. 115, Mar. 20, 2018.

(12)    Pursuant to the request of the Chapter 7 Trustee, the Debtor turned over the diamond ring. Tr. at p. 115, Mar. 19, 2018.

(13)    The Debtor was not asked specifically about her interests in jewelry at the first session of the 341 Meeting held on June 5, 2014. U.S. Trustee Exh. No. 2.

(14)    The Chapter 7 Trustee testified that the Debtor "had a willingness to cooperate, to provide as many disclosures as possible. She, at all times with me, was, I believe, truthful and honest." Tr. at p. 71, Mar. 20, 2018.

(15)    The Chapter 7 Trustee filed a No Asset Report in the underlying bankruptcy case on August 10, 2017. Debtor Exh. No. 13.

## DISCUSSION

"The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor." *Soft Sheen Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (Squires, J.). To advance the policy of providing a debtor a fresh start, objections to a debtor's discharge are to be construed strictly against movants and liberally in favor of a debtor. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).

The party objecting to a debtor's discharge bears the burden of proof. Fed. R. Bankr. P. 4005; *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999). The objecting party must meet this burden by a preponderance of the evidence. *Scott*, 172 F.3d at 966-67.

The U.S. Trustee asks that the court deny discharge for the Debtor under section 727(a)(4)(A), which requires a showing of the Debtor's intent. *Schaumburg Bank & Tr. Co., N.A. v. Hartford (In re Hartford)*, 525 B.R. 895, 905 (Bankr. N.D. Ill. 2015) (Barnes, J.). Section 727(a)(4)(A) of the Bankruptcy Code provides that the court shall not grant a debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the [bankruptcy] case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

To prevail on a denial of discharge under section 727(a)(4)(A), the movant must prove that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011); *see also Rutili v. O'Neill (In re O'Neill)*, 468 B.R. 308, 327 (Bankr. N.D. Ill. 2012) (Schmetterer, J.).

Regarding the first element, the phrase "statement under oath" within the meaning of section 727(a)(4)(A) is generally read broadly. "A debtor's petition, schedules, statement of financial

affairs, statements made at a section 341 meeting, testimony given at a Bankruptcy Rule 2004 examination, and answers to interrogatories all constitute statements under oath" for purposes of section 727(a)(4)(A). *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004) (Schmetterer, J.).

Regarding the third element, because direct evidence of intent to defraud is usually unavailable, "[i]ntent under section 727(a)(4)(A) may be inferred from circumstantial evidence or by inference based on a course of conduct." *Baccala Realty, Inc. v. Fink (In re Fink)*, 351 B.R. 511, 527 (Bankr. N.D. Ill. 2006) (Squires, J.). In the absence of actual intent to defraud, courts have found that a debtor must have acted with a "reckless disregard" for the truth based on the omissions. *Stamat*, 635 F.3d at 978. A movant can establish "reckless disregard" by showing that the debtor made numerous false statements that, taken in a cumulative effect, harm the bankruptcy estate. *Id.* at 982. The totality of the debtor's false statements or omissions must rise above "mere negligence." *Id.* Further, "[s]ubsequent disclosures are evidence of innocent intent." *Bensenville Cmty. Ctr. Union v. Bailey (In re Bailey)*, 147 B.R. 157, 165 (Bankr. N.D. Ill. 1992) (Schmetterer, J.).

As to the last element, "[a] fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" *Stamat*, 635 F.3d at 982 (*citing Retz v. Samson, et al. (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010)). This broad interpretation of the element of materiality ensures the "successful functioning of the Bankruptcy Code [which] hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 496 (7th Cir. 2007).

In light of the foregoing, the court must consider whether the facts in this case establish the elements set forth in *Stamat*. The U.S. Trustee alleges that the Debtor's failure to disclose her interests in the wedding set and diamond ring on the Original Schedules violated section 727(a)(4)(A), and that she acted with a reckless disregard for the truth.

Going through the list of elements as set forth in *Stamat*, there is no question that the Debtor failed to list the diamond ring and diamond wedding set on Schedule B of the Original Schedules, and the Debtor admits as much. Debtor Exh. No. 1. As a debtor's schedules constitute a statement under oath within the meaning of section 727(a)(4)(A), *Broholm*, 310 B.R. at 880, the first requirement of *Stamat* is satisfied. The Debtor also admits that she had an interest in the diamond ring and wedding set as of the Petition Date and the filing of the Original Schedules. Thus, the omission of the rings from the Original Schedules rendered them objectively false, satisfying the second requirement. There seems therefore little question that the Debtor knew or should have known that the missing jewelry items on the schedules constituted false omissions, as she admits that she knew as of the Petition Date that she owned interests in the jewelry at issue. Therefore, the third requirement is also satisfied.

Setting aside the fourth *Stamat* requirement for the moment, the omission of the wedding set and diamond ring satisfies fifth element; the materiality element of *Stamat*. The Debtor argues that the U.S. Trustee cannot prove the materiality element because the Debtor's estate was not administered and the Chapter 7 Trustee filed a No Asset Report in the case. This, the Debtor argues, indicates that the Debtor did not own anything of significant value, including the diamond

ring and diamond wedding set, and that the omission of the rings in the Original Schedules was therefore immaterial.

That premise is faulty. "In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Stamat*, 635 F.3d at 982. The threshold for materiality is low; an omission is material if it "bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Id.* Even if the rings at issue had little to no value, they should have appeared on the Original Schedules as "[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992). Because the jewelry was owned by the Debtor at the time of her bankruptcy filing, it is presumed property of the estate, and its omission from the Original Schedules constitutes a material omission under section 727(a)(4)(A).

Returning to the fourth and now final requirement, the U.S. Trustee must show that the Debtor acted with the requisite intent, or at the very least reckless disregard, to harm the bankruptcy estate when she made the omissions. At no point during the Trial did the Debtor indicate that she intentionally excluded the omitted jewelry from the Original Schedules. While actual intent under section 727(a)(4)(A) may also be proven by "circumstantial evidence or by inference based on a course of conduct," *Fink*, 351 B.R. at 527, instead of doing so the U.S. Trustee argues that the Debtor acted with a reckless disregard for the truth.

The U.S. Trustee argues that the Debtor did not put enough time into completing her Original Schedules in which she omitted the diamond ring and the wedding set. Subsequently, the U.S. Trustee contends that the Debtor swore under oath at the first session of the 341 Meeting on June 5, 2014 that she reviewed her schedules and believed them to be true and accurate, a statement that was inaccurate due to the omissions. In addition, the U.S. Trustee argues that even the Amended Schedules were prepared hurriedly, which evidences that the Debtor did not take her obligation to submit accurate schedules seriously. Last, the U.S. Trustee argues that the Debtor did not provide the Chapter 7 Trustee with information regarding the appraisals of the omitted rings.

In turn, the Debtor argues that the omission of the two rings was simply a mistake. She states that, because she used the same bankruptcy attorney in the 2014 bankruptcy as she did in her 2009 bankruptcy, they used the same schedules and merely updated them, which caused her to review the schedules less critically than she otherwise would have. She also maintains that she was honest and candid at all sessions of the 341 Meeting and answered the Chapter 7 Trustee's questions as accurately as possible, allegations that are supported by the Chapter 7 Trustee's testimony.

The Original Schedules submitted by the Debtor were false, due to the omission of the jewelry. A few months after the Petition Date, the Debtor filed the Amended Schedules, which disclosed all of her interests in jewelry, albeit listed the diamond ring as having "unknown" value. The U.S. Trustee argues that a debtor may not escape a false oath claim by amending her schedules after the fact. For this proposition, the U.S. Trustee points to *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 889-900 (Bankr. N.D. Ill. 2003) (Schmetterer, J.). The debtor in the *Costello* case, however, omitted and concealed numerous property interests from the court in a systemic

manner, as well as executed an affidavit stating that he had turned over all business records to the
other party when he had, in fact, failed to do so. *Id.* at 888-90.

   The differences between the facts of the *Costello* case and the facts in the matter before this
court are significant. Here, the Debtor was never prompted to amend any schedules, nor was she
"caught" trying to mislead the court. The Debtor independently amended her schedules
approximately four months after the Original Schedules were filed when she again reviewed her
schedules for the first continued 341 Meeting. Once the Amended Schedules were filed, the court
and the Chapter 7 Trustee were aware of all of the Debtor's interests, if not the exact value of all of
those interests. "Although subsequent voluntary disclosure through testimony or an amendment to
the schedules cannot expunge the falsity of an oath, subsequent disclosures are evidence of innocent
intent." *Rafool v. Wilson (In re Wilson)*, 290 B.R. 333, 339 (Bankr. C.D. Ill. 2002). In this matter, the
Debtor amended her schedules voluntarily, which evidences an innocent intent.

   It must also be noted that a debtor has a right to amend her bankruptcy schedules
throughout her entire bankruptcy case. Bankruptcy Rule 1009(a) provides that a debtor's
bankruptcy schedules "may be amended by the debtor as a matter of course at any time before the
case is closed." This Bankruptcy Rule is interpreted to allow liberal and free amendment of a
debtor's schedules. *See In re Yonikus*, 996 F.2d 866, 871–72 (7th Cir. 1993) ("a debtor may amend a
voluntary petition pursuant to Bankruptcy Rule 1009(a) 'as a matter of course at any time before the
case is closed.'") (quoting Advisory Committee note to Bankruptcy Rule 1009), *abrogated on other
grounds by Law v. Siegel*, 571 U.S. 415 (2014); *In re Stone*, 504 B.R. 908, 913 (Bankr. C.D. Ill. 2014); *In re
Anzalone*, 318 B.R. 127, 128 (Bankr. C.D. Ill. 2004). This interpretation furthers the policy of
providing the debtor a fresh start. *In re Magallanes*, 96 B.R. 253, 256 (B.A.P. 9th Cir. 1988). The U.S.
Trustee's argument that the Debtor's amendment to her schedules evidences a fraudulent intent
must be considered in light of this right. Certainly it must be the case that amendments are there for
the purpose of correcting omissions and inaccuracies, and absent some other indicia of fraud or
reckless disregard, amendment alone cannot suffice to satisfy section 727.

   There are a myriad of section 727(a)(4)(A) cases which have applied the "reckless disregard"
standard and found that the debtor exhibited the intent required under this objection to discharge.
In the *Stamat* case, the debtors failed to report the refinancing of a second home, their partnership
interests, a counterclaim, a $10,000.00 settlement payment, and further misreported their income.
635 F.3d at 979. The Seventh Circuit affirmed the bankruptcy court in its decision that the
"cumulative effect of their false statements was material and established a pattern of reckless
indifference to the truth." *Id.; see also The Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th
Cir. 2009) ("[T]he cumulative effect of false statements may, when taken together, evidence a
reckless disregard for the truth sufficient to support a finding of fraudulent intent.").

   In another action under section 727(a)(4)(A), a plaintiff was found to have proven the
debtor's intent under the reckless disregard standard due to the cumulative effect of the debtor's
false statements. *Korrub v. Cohn (In re Cohn)*, 561 B.R. 476 (Bankr. N.D. Ill. 2016) (Hollis, J.). There,
the debtor had failed to list friends and family and their debts from the list of creditors, omitted
another significant debt owed to another creditor, and did not disclose his dependents nor his
divorce to the court. *Id.* at 497. Similarly in another recent decision from this district, the debtors
concealed information about patent and other asset ownership from the court, lied at a 341 meeting
about owing a creditor money, and omitted another creditor from their schedules to avoid the court

9

discovering the fictitious entity created by the debtors. *Ruter v. Schryver (In re Schryver)*, 558 B.R. 856, 860-70 (Bankr. N.D. Ill. 2016) (Lynch, J.). The court found that these actions "were at the very least a result of reckless disregard for the truth, and more likely out of fraudulent intent to deceive creditors or the bankruptcy trustee." *Id.* at 872.

These cases share a commonality—the debtors lied and concealed assets from the bankruptcy court repeatedly and systematically, without attempts to correct the misinformation. When the cumulative errors or omissions are sufficient to demonstrate that a debtor must have had, at minimum, a reckless disregard for the truth, if not actual intent, then the fourth requirement of *Stamat* is satisfied.

The U.S. Trustee argues that the totality of the Debtor's actions demonstrate that she had, at best, a reckless disregard for the truth. He asserts that the Original Schedules were false due to the omission of the jewelry, and that the Debtor made false oaths during the 341 Meeting when, in particular, the Debtor testified at the June 5, 2014 meeting that her schedules were true to the best of her knowledge. The U.S. Trustee also takes issue with the fact that the Amended Schedules provided the appraised value of the wedding set, but valued the diamond ring as "unknown." At subsequent sessions of the 341 Meeting, the Debtor discussed needing to get the diamond ring appraised as she did not know how much it was worth, but did not disclose or indicate that it was being appraised. The U.S. Trustee argues that the Debtor did not sufficiently explain why she had obtained the appraisal for the wedding set, but not the diamond ring, at the time she filed the Amended Schedules.

In this matter, the Debtor omitted two rings from the Original Schedules filed on the Petition Date. She then attended the June 341 meeting in which she affirmed that the schedules were true and correct to the best of her knowledge. The Debtor argues that, before the continued 341 Meeting in July 2014, she and Molnar-Boncela reviewed the Original Schedules, at which time she first noticed the omission of the diamond ring and wedding set. The Debtor, with the help of her attorneys, added the missing jewelry items and filed the Amended Schedules. The Amended Schedules were filed, not at the direction of a creditor or the Chapter 7 Trustee, but because the Debtor found the omission and chose to remedy it through disclosure.

The U.S. Trustee also takes issue with the fact that the Debtor indicated on the Amended Schedules that the value of the diamond ring was "unknown." At the Trial, the Debtor testified that while she had taken both the wedding set and the diamond ring to be appraised by a jeweler, she had not received the appraisal of the diamond ring at the time that the Amended Schedules were filed. Tr. at pp. 114-15, Mar. 20, 2018. Despite of the appraisal of the diamond ring being dated on July 25, 2014, both the Debtor and Molnar-Boncela testified that the appraisal was not in their possession as of July 2014. While the testimony did not necessarily clarify the reason why they did not have the appraisal on that date, the court found the combined testimony to be credible. Further testimony explained why, on the advice of counsel, the Second Amended Schedules continued to reflect a value of "unknown" for the diamond ring, even though the ring's description included the appraised amount.[5]

---

[5]    The U.S. Trustee makes much of this choice, however the Seventh Circuit recently stated, in the context of a section 727(a)(4) claim, that "[a] debtor's testimony about advice from her bankruptcy attorney is one kind of evidence that may tend to negate fraudulent intent." *In re Kempff*, 847 F.3d 444, 451 (7th Cir.

Other actions taken by the Debtor also help to establish that she did not have the requisite intent under section 727(a)(4)(A). The Debtor willingly turned over both the diamond ring to the Chapter 7 Trustee, who proceeded to personally get the ring appraised. The Debtor also timely responded to the subpoena which requested all appraisals for any jewelry owned by the Debtor, and she was thorough and complete in her response. There is no indication by the Debtor's actions that she was actively intending to conceal the jewelry. By contrast, the Debtor was cooperative with the Chapter 7 Trustee's investigation of the assets and the Chapter 7 Trustee credibly testified that he believes the Debtor was honest and forthcoming throughout. The U.S. Trustee has not given any reason for this court to believe that the omissions were anything but an innocent, albeit negligent, error. The Debtor's own testimony which described the omission as an intentional mistake was credible to this court.

Guidance from the Seventh Circuit indicates that when considering whether a debtor's actions rise to the level of reckless disregard, the debtor's level of education and business experience should be considered. *Stamat*, 635 F.3d at 982; *see Schryver*, 558 B.R. at 871 ("In determining whether a debtor has shown reckless indifference to the truth, the court may consider the debtor's level of education and experience."). The Debtor in this matter left high school and received a G.E.D. while in her twenties. While she did attend phlebotomy school and obtain a college degree in general studies, the Debtor has not worked outside the home since the early 1990's. By any measure, the Debtor is not a sophisticated debtor in the manner of business expertise. This also serves to mitigate her intent under section 727(a)(4)(A).

In light of the Debtor's testimony, and the other testimony heard from other witnesses, the court cannot conclude that the omissions were made with fraudulent intent. The Debtor's trial testimony regarding her lack of intent was credible, and no witnesses were presented to the contrary. There appears to be no reckless disregard for the truth in failing to list the wedding set and diamond ring on the Original Schedules. While these items were inadvertently omitted, the Debtor disclosed all jewelry items on the Amended Schedules and turned over the diamond ring upon the request of the Chapter 7 Trustee.

The court therefore finds that the U.S. Trustee failed to carry its burden of proof with respect to Count III of the Complaint. The U.S. Trustee has failed to establish that the Debtor acted with the requisite intent with respect to the omitted jewelry items. Accordingly, the court declines to deny the Debtor's discharge under section 727(a)(4)(A), and judgment in favor of the Debtor on this count, the last remaining count in this Adversary, will be entered.

CONCLUSION

In this case, the court has been given little or no cause to exercise the drastic remedy of denial of discharge. The Debtor's actions did not constitute a reckless disregard for the truth. The Debtor has proven to be a credible witness, testifying in a straightforward and candid manner. The other witnesses who provided testimony at the Trial appeared to likewise be truthful and credible. That testimony belies the fraudulent intent the U.S. Trustee would have the court find. To deny the Debtor a discharge on the facts at bar would be unjust.

---

2017) (*citing Se. Penn. Synod of the Evangelical Lutheran Church in Am. v. Gotwald (In re Gotwald)*, 488 B.R. 854, 872 (Bankr. E.D. Pa. 2013)).

For the foregoing reasons, the court finds that the U.S. Trustee has failed to carry its burden under section 727(a)(4)(a).  As a result, judgment in favor of the Debtor will be rendered on Count III of the Complaint.  A separate judgment will be issued concurrent with this Memorandum Decision.

Dated: July 20, 2018

ENTERED:

Timothy A. Barnes
United States Bankruptcy Judge